HERITAGE MANOR OF BLAYLOCK PROPERTIES, INC., a Dissolved Texas Corporation, Lloyd D. Blaylock, and Charles Blaylock, Appellants,

v.

Bert PETERSSON d/b/a Petersson & Associates, Appellee.

No. 05–83–00253–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 1984.

Rehearing Denied Sept. 28, 1984.

G. Leroy Street, Geary, Stahl & Spencer, Dallas, for appellants.

James K. Campbell, DeHay & Blanchard, W. Coleman Sylvan, Dallas, J.W. (Don) Johnson, Houston, for appellee.

Before CARVER, GUILLOT and STEWART, JJ.

GUILLOT, Justice.

Appellants' motion for rehearing is granted. Our former opinion and supplemental opinion are withdrawn, and the following is now our opinion.

This is an appeal by Heritage Manor of Blaylock Properties, Inc., a dissolved Texas corporation, Lloyd D. Blaylock, and Charles Blaylock (hereinafter collectively referred to as "Heritage") from a judgment in favor of Union Standard Insurance Co. ("Union") and Bert Petersson d/b/a Petersson & Associates ("Petersson"). Union sued Heritage for a premium owed on an insurance policy for 1978, and Petersson sued Heritage for an amount due on a note and amounts due for premiums that he had paid for Heritage. Heritage counterclaimed, alleging that it had been induced to obtain policies for 1976–1978 through fraud, constituting a violation of the Deceptive Trade Practices Act and the Insurance Code, resulting from Petersson's failure to inform it of its premium liability. The court granted a partial directed verdict for Union and Petersson. The remainder of the case went to the jury which found that Heritage failed to pay the premium for 1978 and that Union was entitled to it. The jury also awarded Union attorney's fees. With respect to Petersson, the jury found that Heritage owed Petersson an amount due on a promissory note. The jury further found that Petersson had paid certain premiums for 1978 and 1979 that were not paid by Heritage on policies issued by Union and that Heritage owed Petersson the amount of those payments. The jury also awarded Petersson attorney's fees. Heritage appeals the judgment only with respect to Petersson.

In its first point of error, Heritage contends that the trial court erred in granting Petersson's motion for directed verdict on Heritage's claim that Petersson violated the Insurance Code and the Deceptive Trade Practices Act by failing to explain the premium exposure under the retrospective premium policies. In related points of error two, three, and four, Heritage contends that the court erred in excluding testimony of William Sheffield, the president of Heritage, to the effect that: until 1978, he was not informed of the possibility of being charged the retrospective premiums; during 1976 and 1977 the premium exposure was not explained by Petersson and not understood by Heritage; and, during 1977, he did not have any knowledge concerning retrospective premiums being incurred by Heritage for the 1976 policy. In points of error five and six, Heritage contends that the court erred in granting motions in limine precluding testimony regarding whether Heritage read any documents relating to any premium exposure under the policy at the time of acquiring it and what representations or omissions were made by Petersson in connection with the premiums. We disagree with all of these contentions. Petersson had dealt as an insurance agent with Sheffield since before the incorporation of Heritage in 1972. In 1976, Petersson first obtained a worker's compensation policy from Union for Heritage; the policy was a retro-

spective premium policy as opposed to a different type which Heritage had held the previous year. Although no one with Heritage read the policy, nevertheless it was bound by the terms of the policy. *Indiana & O. Live Stock Insurance Co. v. Keiningham*, 161 S.W. 384 (Tex.Civ.App.—Dallas 1913, writ ref'd). Moreover, someone at Heritage had a duty to read the policy and, failing to do so, would be charged with knowledge of its conditions and coverage. *Rogers v. Insurance Co. of State of Pennsylvania*, 513 S.W.2d 113 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). To the extent that the Fort Worth Court of Appeals' opinion in *McNeill v. McDavid Insurance Agency*, 594 S.W.2d 198 (Tex.Civ. App.—Fort Worth 1980, no writ), can be read to impose a duty on the insurance agent to explain policy terms, we disagree with it. In that opinion, no rationale was given for singling out local recording agents and subjecting them to a different rule of law (a duty to explain terms of an application for insurance), and we know of none. Moreover, Heritage ratified the insurance policy by accepting its benefits. Accordingly, we find no error in the court's partial granting of a directed verdict and excluding the testimony of Sheffield as to what had been explained to him by Petersson and what Sheffield understood and no error in excluding the testimony regarding Heritage's reading of documents and Peterssons's representations or omissions. We overrule Heritage's first six points of error.

■ In its seventh through twelfth points of error, Heritage contends that the trial court erred in rendering judgment for Petersson on jury findings that Heritage owed Petersson the amounts of $8,151.00, $6,595.00, and $9,559.00 for premiums paid by Petersson to Union in 1978 and 1979 pursuant to a guaranty agreement with Union because there was no evidence to raise a duty of Heritage to reimburse Petersson for the payments and because the evidence conclusively established that the payments by Petersson were pursuant to his contractual agreement with Union. But Petersson was subrogated to the rights of Union against Heritage as a result of paying the obligations of Heritage to Union pursuant to the guaranty agreement, *see Fulton v. Edge*, 435 S.W.2d 263 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.), or even if there had been no such agreement, pursuant to the universal and customary manner of doing business between an insurance agent and an insured. *Ward v. Hanchett*, 47 S.W.2d 360, 361 (Tex.Civ.App.—San Antonio 1932), *writ dism'd*, 65 S.W.2d 268 (Tex.Comm'n App. 1933). As subrogee, he stood in the shoes of the subrogor. *Id.; see Hicks v. Wright*, 564 S.W.2d 785, 797 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Thus, Petersson was subrogated to the rights that Union had by the terms of the insurance contract to recover the premiums. We overrule Heritage's seventh through twelfth points of error.

■ In its thirteenth and fourteenth points of error, Heritage contends that the court erred in rendering judgment awarding Petersson attorney's fees because there was no contractual or statutory basis for the award and because there was no evidence whereby attorney's fees could be apportioned between claims that did and did not support such an award. Since we hold that Petersson stood in the shoes of Union, and the suit was on a contract, attorney's fees were clearly authorized under TEX. REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984); *see Ward*, 47 S.W.2d at 361.

As to the contention that there was no evidence of how to apportion the fees, Heritage's attorney testified that he did not "break out" the fee since the facts involved in both claims were very close to identical. Here, no apportionment was necessary since all of Petersson's claims were ones that, if upheld, would support an award of attorney's fees. *See De La Fuente v. Home Savings Association*, 669 S.W.2d 137, 146 (Tex.App.—Corpus Christi 1984, no writ). We overrule Heritage's thirteenth and fourteenth points of error.

Affirm.

Costs taxed against appellants.