**GARRISON CONTRACTORS, INC., and Garrison Welders, Inc., Appellants,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY and Robert G. Garrett, Appellees.**

No. 08–95–00264–CV.

Court of Appeals of Texas, El Paso.

July 25, 1996.

Rehearing Overruled Aug. 28, 1996.

Jeffrey F. Thomason, Todd, Barron & Thomason, P.C., Odessa, for Appellants.

W. Neil Rambin, Strasburger & Price, L.L.P., Dallas, for Appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from two summary judgments granted in favor of Liberty Mutual Insurance Company, the plaintiff and counter-defendant, and Robert Garrett, the third-party defendant, on Liberty Mutual's suit on sworn account to recover retrospective insurance premiums allegedly due from defendant and counter-plaintiff, Garrison Contractors, Inc. We affirm in part and reverse in part.

### FACTS

This dispute arises from a three-year, multi-line insurance policy Garrison purchased from Liberty Mutual (the "Policy"). The dispute centers on the appropriate calculation of the Policy's retrospective premiums. Through the Policy period, Garrison paid Liberty Mutual standard premiums in the aggregate amount of $865,000. In addition, Garrison paid Liberty Mutual retrospective premiums over the three-year Policy period. At the end of the Policy period, Liberty Mutual claimed Garrison owed an additional $159,371.85 in retrospective premiums. Garrison refused to pay the additional retrospective premiums, and Liberty Mutual filed a suit on sworn account to collect them. Garrison filed counterclaims against Liberty Mutual and third-party claims against Robert Garrett, the Liberty Mutual agent who sold Garrison the Policy. Garrison alleged that Liberty Mutual misrepresented the terms of the retrospective premium thereby breaching the duty of good faith and fair dealing, breaching Liberty Mutual's fiduciary duty to Garrison, violating the Texas Deceptive Trade Practices Act, and violating Article 21.21 of the Insurance Code. Garrison further alleged that the same misrepresentations supported their fraud, duress, and estoppel affirmative defenses to Liberty Mutual's sworn account claim.

On November 15, 1993, Liberty Mutual and Garrett filed a motion for summary judgment on all of Garrison's counter and third-party claims. The trial court granted the partial summary judgment in favor of Liberty Mutual and Garrett on October 14, 1994 and ordered that Garrison take nothing by its counter and third-party claims. Liberty Mutual filed a second motion for summary judgment on its affirmative claim for relief on sworn account. The trial court granted that partial summary judgment, and on April 3, 1995, entered final judgment awarding Liberty Mutual the sum of $159,371.85, plus pre- and post-judgment interest and attorney's fees. In three points of error, Garrison alleges that the trial court erred in: (1)

granting the first summary judgment against it on its counterclaims because the summary judgment proof established genuine issues of material fact as to each counterclaim and third-party claim; (2) granting the second summary judgment against it because the summary judgment proof raised genuine issues of material fact as to each of its affirmative defenses; and (3) granting the second summary judgment against it because the summary judgment proof raised genuine issues of material fact as to elements of Liberty Mutual's cause of action for recovery on a sworn account.

## STANDARD OF REVIEW

■ The standard of review on appeal from a summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985); *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629 (Tex.App.—El Paso 1992, no writ); *Marsh v. Travelers Indemnity Company of Rhode Island*, 788 S.W.2d 720 (Tex.App.—El Paso 1990, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to the required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970).

■ In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judg-

ment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

## THE FIRST SUMMARY JUDGMENT

In its first point of error, Garrison alleges that the trial court erred in granting summary judgment against it on all of its counterclaims and third-party claims. Liberty Mutual and Garrett presented five grounds in their first motion. First, relying on *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex.App.— Dallas 1984, writ ref'd n.r.e.), they argued that all of Garrison's alleged misrepresentations constituting its DTPA and Insurance Code claims were barred because the terms of the Policy contradicted each alleged misrepresentation. Second, Garrett argued that because the Insurance Code does not provide a private cause of action against an employee of an insurance company, Garrison has no cause of action against Garrett individually for alleged violations of the Insurance Code. Next, Liberty Mutual and Garrett claimed that no fiduciary relationship could exist between either Liberty Mutual or Garrett on the one hand and Garrison on the other as a matter of law. In its fourth ground for summary judgment, Liberty Mutual and Garrett alleged that the duty of good faith and fair dealing is inapplicable as a matter of law to Garrison's claims because the duty extends only to claims settling practices and does not apply in the context of policy purchase or premium collection. Finally, Liberty Mutual and Garrett argued that by accepting the benefits of the Policy for three years, Garrison ratified Liberty Mutual's method of calculating the retrospective premiums. The trial court entered an order granting summary judgment in favor of Liberty Mutual and Garrett on all of Garrison's counterclaims. The trial court did not specify the grounds on which it decided.

### Misrepresentations in Violation of the DTPA and Insurance Code

Liberty Mutual and Garrett moved for summary judgment on Garrison's counter-

claims under the DTPA and the Insurance Code on the ground that Garrison had a duty to read the Policy, and the Policy contradicted the misrepresentations Garrison alleged. Liberty Mutual and Garrett relied on the Dallas Court of Appeals' holding in *Heritage* to support their contention. In *Heritage,* an insured alleged fraud and violations of the DTPA based on the insurance agent's failure to adequately explain certain policy provisions to him. *See Heritage,* 677 S.W.2d at 691. The Dallas Court found that the allegedly unexplained terms were addressed in the policy and declined to hold that an insurance agent has a duty to explain policy terms to an insured. *Id.* Rather, the court held that an insured has a duty to read the policy and, failing to do so, would be charged with knowledge of the policy terms and conditions. *Id.*

▮ Garrison set out Liberty Mutual's alleged misrepresentations in two affidavits offered as summary judgment proof, one executed by its president and one by its executive vice-president. Garrison alleged five separate misrepresentations Liberty Mutual made with regard to the Policy and its terms. Four of the alleged misrepresentations, like the misrepresentations alleged in *Heritage,* are no more than alleged failures to disclose information readily obtainable from a reading of the Policy. One of the misrepresentations Garrison alleged in its affidavits, however, goes beyond a simple failure to apprise Garrison of information found in the terms of the Policy. Garrison alleged Liberty Mutual represented that the retrospective premium billed to Garrison would not be in excess of 10 to 15 percent of the premiums charged in 1986. It is undisputed that the retrospective premiums charged exceeded 15 percent of the 1986 premium. Garrison thus alleged an affirmative misrepresentation about the meaning of one of the terms of the Policy as distinguished from a simple failure to disclose information readily obtainable from the Policy itself.

▮ Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve is an actionable deceptive act or practice pursuant to § 17.46(b) of the DTPA. Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (Vernon Supp. 1996). Under § 16 of article 21.21 of the Insurance Code, a plaintiff may recover for violations of practices "specifically enumerated" in § 17.46(b) of the DTPA. Tex.Ins. Code Ann. art. 21.21, § 16(a) (Vernon Supp. 1996). Garrison thus alleged a misrepresentation actionable under both the DTPA and the Insurance Code: that Liberty Mutual represented the Policy conferred the right to have retrospective premiums limited to 10 to 15 percent of the 1986 premium when, in fact, the Policy did not confer that right. *See Also Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 98–9 (Tex.1994) (insurance company liable for agent's misrepresentation of terms and benefits of policy pursuant to Insurance Code and DTPA). Garrison's allegation creates a fact issue sufficient to defeat the summary judgment against Garrison on its DTPA and Insurance Code counterclaims.

### Garrett's Individual Liability Under the Insurance Code

▮ Garrett moved for summary judgment on Garrison's Insurance Code claims against him individually on the ground that the Insurance Code does not provide a private cause of action against an employee of an insurance company. Garrett relies on two federal cases holding that article 21.21 of the Insurance Code does not provide a cause of action against individual employees of an insurance company. *See Ayoub v. Baggett,* 820 F.Supp. 298, 299 (S.D.Tex.1993); *French v. State Farm Insurance Co.,* 156 F.R.D. 159, 163 (S.D.Tex.1994). Decisions of the federal courts of appeals and district courts applying Texas law are not binding on this court. They are, however, received "with respectful consideration." *Denton v. Texas Department of Pub. Safety Officers Assoc.,* 862 S.W.2d 785, 791 n. 4 (Tex.App.—Austin 1993), *aff'd,* 897 S.W.2d 757 (Tex.1995). After due consideration, we respectfully decline to follow the federal cases Liberty Mutual cites. We find no Texas case law directly addressing this point.

▮ Garrett's argument raises an issue of statutory interpretation. When the court is confronted with a question of statutory

construction, it must first determine whether the statute is ambiguous. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). If the meaning of the statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common, everyday meaning. *Id.* at 815. The statute in question is clear. Article 21.21, § 16 provides:

> Sec. 16.(a) Any person who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 ... *may maintain an action against the person or persons* engaging in such acts or practices.... TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1996) [emphasis added].

Article 21.21, § 2 provides:

> When used in this Article:
>
> (a) 'Person' shall mean any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance, including *agents*, brokers, adjusters and life insurance counselors. TEX. INS.CODE ANN. art. 21.21, § 2(a) (Vernon Supp.1996).

The clear language of the statute provides that any person who has sustained damages resulting from another's engaging in deceptive acts or practices may maintain a cause of action against the person or persons engaging in the relevant act. The statute further defines the term "person" to include any legal entity engaged in the business of insurance, including agents. It is undisputed that Garrett was an agent for Liberty Mutual. Thus, the plain language of the statute provides Garrison with a private cause of action against Garrett.

### *Fiduciary Duty*

■ There is no general fiduciary duty between an insurer and its insured. *Caserotti v. State Farm Insurance Co.*, 791 S.W.2d 561, 565 (Tex.App.—Dallas 1990, writ denied). Fiduciary duty is an extraordinary duty which will not be lightly created. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.—Dallas 1989, no writ). Fiduciary relationships arise from formal,

technical relationships such as attorney/client, or from informal, social, moral, or personal relationships of confidence and trust which impose greater duties as a matter of law. *Lovell v. Western National Life Insurance Co.*, 754 S.W.2d 298, 303 (Tex.App.—Amarillo 1988, writ denied). The record in this case shows that the transaction at issue was nothing more than an arms-length contract between businesses. Garrett stated in an affidavit in support of the motion for summary judgment that his relationship with Garrison did not exceed that of the normal, business-oriented relationship. Garrison argues Liberty Mutual created a fiduciary relationship when Garrison relied on Liberty Mutual's representations that Liberty Mutual would "take care of," "look out for," and was "working for" Garrison. Garrison's allegations are insufficient as a matter of law to establish a relationship of trust and confidence rising to the level of fiduciary obligation. The fact that one business person trusts another and relies on a promise to perform a contract does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty. Subjective trust alone is not enough to transform an arms-length dealing into a fiduciary relationship. *Crim Truck & Tractor Company v. Navistar International Transportation Corporation*, 823 S.W.2d 591, 595 (Tex.1992). If the issue is one of no evidence, whether the fiduciary relationship exists is a question of law. *Crim Truck*, 823 S.W.2d at 594. In this case, there was no evidence sufficient to establish a fiduciary relationship, and the trial court appropriately granted summary judgment against Garrison on its fiduciary duty claims.

### *Good Faith and Fair Dealing*

■ The duty of good faith and fair dealing results from "a special relationship between the parties governed or created by a contract." *Hopkins v. Highlands Insurance Co.*, 838 S.W.2d 819, 826 (Tex.App.—El Paso 1992, no writ), *citing Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 167 (Tex.1987); *see also Viles v. Security National Insurance Company*, 788 S.W.2d 566, 567 (Tex.1990). In *Arnold*, the

Texas Supreme Court recognized that an insurer owes its insured the duty of good faith and fair dealing in handling claims. The Supreme Court set forth the policy reasons requiring the duty of good faith and fair dealing as follows:

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims. *Arnold,* 725 S.W.2d at 167.

The concern the good faith and fair dealing cause of action addresses, that unscrupulous insurers might take advantage of an insured's unequal bargaining power in negotiating and settling a claim, does not reach the purchase transaction or the calculation and payment of premiums. Consequently, Texas courts have not extended the duty to that area of the insurer/insured relationship. Garrison's summary judgment proof does not include any allegations of misconduct in the claims handling process. Garrison cites no cases extending the duty of good faith and fair dealing to calculation and payment of premiums, and as we have already stated, we find none. Accordingly, we conclude that the trial court appropriately granted summary judgment against Garrison on its good faith and fair dealing cause of action.

### Ratification

 Finally, Liberty Mutual and Garrett asserted that all of Garrison's counterclaims were barred because Garrison had accepted benefits under the policy and had therefore ratified the manner in which Liberty Mutual computed the retrospective premiums. It is undisputed that Garrison had made several claims under the policy and Liberty Mutual had paid them. Ratification requires more, however, than mere acceptance of benefits. A person or entity ratifies an act or transaction if he or she adopts or confirms the act or transaction with knowledge of all material facts. *K.B. v. N.B.,* 811 S.W.2d 634, 638 (Tex.App.—San Antonio 1991, writ denied), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992). Garrison's summary judgment evidence raised a fact issue about its knowledge of all material facts. Garrison's president, Willie Garrison, stated in his affidavit that Garrison had repeatedly questioned Liberty Mutual on its calculation of the retrospective premiums, but Liberty Mutual refused to cooperate. Considered with Garrison's assertion that Liberty Mutual misrepresented the maximum retrospective premium allowed under the terms of the Policy, Liberty Mutual's alleged later refusal to give Garrison information on how the premiums were calculated creates a fact issue as to whether Garrison continued to accept benefits under the Policy with knowledge of all facts material to the calculation of the Policy premiums. Accordingly, Liberty Mutual failed to establish that it was entitled to summary judgment on all of Garrison's counterclaims on the basis of ratification.

### Conclusion

We sustain Garrison's first point of error to the extent it complains of the summary judgment against it on its DTPA and Insurance Code counterclaims against Liberty Mutual and Garrett, and we reverse the judgment on those issues. We overrule Garrison's first point of error to the extent it complains of the trial court's entry of summary judgment on its claims based on breach of fiduciary duty and breach of the duty of good faith and fair dealing, and affirm the judgment on those issues.

### THE SECOND SUMMARY JUDGMENT

In the second summary judgment, the trial court granted judgment in favor of Liberty Mutual on its affirmative sworn account claim. Garrison attacks the second summary judgment in its second and third points of error. In its second point, Garrison alleges that Liberty Mutual failed to establish that there were no issues of material fact with

regard to Garrison's affirmative defenses to the sworn account claim. In its third point, Garrison alleges that there were issues of material fact preventing Liberty Mutual from establishing its right to judgment as a matter of law on its sworn account claim.

### Standard of Review

In the second summary judgment, Liberty Mutual bore the burden of affirmatively establishing its claims, rather than attacking the counterclaims against it as it had done in the first summary judgment. The standard, however, remains essentially the same. The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Perez,* 819 S.W.2d at 471; *Nixon,* 690 S.W.2d at 548; *Hernandez,* 832 S.W.2d 629; *Marsh,* 788 S.W.2d 720. Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to the required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs,* 450 S.W.2d at 828.

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Stoker,* 813 S.W.2d at 721.

### Liberty Mutual's Sworn Account Claim

The two elements of proof necessary to establish a sworn account are the performance of services and that the amount of the account is "just," which means the prices charged are agreed to or, in the absence of an agreement, that the charges are usual, customary, or reasonable. *Roberts Exp., Inc. v. Expert Transp., Inc.* 842 S.W.2d 766, 770 (Tex.App.—Dallas 1992, no writ). Liberty Mutual therefore had to prove that there were no issues of material fact as to both elements: that it had performed insurance services for Garrison, and that the unpaid charges were "just." There is no dispute in this record with regard to the first element. Liberty Mutual established through the affidavit of Garrett that Garrison made several claims, and Liberty Mutual paid them. Garrison does not dispute that it received services from Liberty Mutual in the form of claims payment.

Liberty Mutual also presented summary judgment evidence on the second element, that the charges due are "just." A party may prove that charges are just by proving either that the charges are agreed to, or alternatively, that the charges are usual, customary, and reasonable. *Roberts Exp., Inc.,* 842 S.W.2d at 770. Liberty Mutual presented the affidavit of John Capps to establish that the retrospective premiums charged were in accordance with the terms of the Policy agreement. Liberty Mutual did not present additional summary judgment evidence on the alternative method of proof, that the charges were usual, customary, or reasonable apart from the agreement. Garrison's president and vice-president, however, raised a fact issue as to whether there was an agreement between the parties. In affidavits responsive to the second motion for summary judgment, the president and vice-president each reassert Liberty Mutual's representation that the terms of the Policy allowed for retrospective premiums of no more than 10 to 15 percent of the 1986 premium. Each further asserts that the retrospective premium was significantly more than Liberty Mutual represented, and Garrison therefore did not agree to the retrospective premiums Liberty Mutual actually charged. Garrison's affirmative assertions that it did not agree to the premiums as charged, but rather agreed to the premiums as allegedly misrepresented, created a fact issue as to whether the retrospective premium charges were agreed to. Because Liberty Mutual did not submit alternative summary judgment proof that the premium charges were reasonable, usual, or customary, there is no undisputed evidence that the premium charges are just. Accordingly, Liberty Mutual failed to carry its burden of proof on summary judgment. We sustain Garrison's third point of error and reverse

the trial court's order granting the second summary judgment.

Our disposition of Garrison's third point of error makes it unnecessary for us to reach its second point of error.

### Conclusion

We reverse the trial court's summary judgments in favor of Liberty Mutual and Garrett, excepting the summary judgment as to Garrison's claims for breaches of fiduciary duty and the duty of good faith and fair dealing which we sustain. We remand this cause for further proceedings consistent with this opinion.