In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-522 CV


____________________



FG HOLDINGS, INC., FG INSURANCE SERVICES, INC.


a/k/a FINANCIAL GUARDIAN, AND 


TRANS-GLOBAL SOLUTIONS, INC., Appellants



V.



LONDON AMERICAN RISK SPECIALISTS, INC. AND 


GUARANTY INSURANCE SERVICES, INC.


f/k/a TIMBERLINE INSURANCE SERVICES, INC., Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-167,676






MEMORANDUM OPINION


 This appeal involves an insurance coverage dispute. FG Holdings, Inc., FG Insurance
Services, Inc. a/k/a Financial Guardian (collectively "FG"), and Trans-Global Solutions, Inc.
("TGS") appeal the trial court's final judgment granting summary judgments in favor of
appellees London American Risk Specialists, Inc. ("London American") and Guaranty
Insurance Services, Inc. f/k/a Timberline Insurance Services, Inc. ("Guaranty"). We affirm.

 TGS entered into a contract ("the Premcor contract") with Clark Refining and
Marketing, Inc., Premcor's predecessor, to construct a new petroleum coke facility inside its
refinery. The contract required TGS to obtain certain specified insurance coverage and
provided, in relevant part, the following:

 3.7 Contractor Furnished Insurance.

 Contractor shall maintain "All Risk" insurance insuring the full contract value
of the Work and all materials and equipment to be incorporated in the Work
less nonrecurring expenses from the start of the construction until final
acceptance. The policy, subject to its terms and conditions, shall include, but
not be limited to, coverage for (a) physical loss or damage resulting from
faulty workmanship, design error and defective materials, (b) performance
testing, (c) expediting/extra expense, (d) transit, (e) temporary off-site storage,
(f) debris removals and (g) third party liability. Additionally, the policy will
include full guarantee maintenance coverage for a period of 12 months. 
Owner shall be included as named insured under the policy.


TGS contacted its insurance agent, Richard Gowen, and requested a quote for the insurance
required by the Premcor contract. Dan Orsini, TGS's Chief Financial Officer, forwarded to
Gowen the insurance specifications provided in the contract. Gowen, employed at the time
by FG, transmitted a request for a quote to London American, a surplus line broker. The
request included a two page summary, a copy of paragraph 3.7 of the contract, and some
general information regarding the project. In his cover memorandum, Gowen wrote:


 See attached insurance specifications regarding coverage extensions, i.e.;

 -- faulty workmanship, design error and defective materials

 . . . .

 -- performance testing

 -- expediting/extra expense

 -- transit

 -- temporary off-site storage

 -- debris removal


 Gowen's request to London American also included a certificate of insurance requesting:

 BUILDERS RISK

 ALL PERILS

 EXCEPT/FLOOD

 QUAKE/WINDSTORM 


 London American forwarded to Liberty Surplus Insurance Corporation ("Liberty")
a request for a quote for the coverage TGS sought and included all the pages Gowen had
forwarded to London American. London American forwarded the request with a cover letter
which stated:

 Ed,

 Attached are the details from Richard regarding the first of two builder's risk
projects for this insured. I believe Richard has already discussed this project
with you. 


 Please review and quote per requested terms and conditions. If you have
questions please let me (and/or Richard) know and we'll try to obtain whatever
you need. 


 Thanks for your consideration. 


London American did not alter Gowen's request and only added the cover letter. Liberty sent
a quote back to London American stating:

 COVERAGE: All Real and personal Property per schedule attached to
your submission. Excluding California Earthquake. 
Y2K event excluded resulting damage based on
questionnaire to be completed by Insured.

 

 PERILS: All Risk of Direct Physical Loss or Damage
including the perils of Flood and Earthquake. 


London American forwarded the quote to FG. Gowen bound the coverage through London
American. London American sent notice to Liberty requesting the coverage be bound. 
London American confirmed to FG that the coverage was bound. The binder lists the perils
covered as "All Risk Including Flood & Earthquake."

 Three months after the policy was bound, London American sent a copy of the policy
to Gowen. The cover letter sent with the policy instructed Gowen to review the policy to
determine its accuracy, and to advise London American if Gowen required any additions,
corrections, or changes to the policy. The policy included specific exclusions for the
following items:

 C. Cost of making good an error, omission or deficiency in designs, plans
or specifications, unless direct physical loss or damage by a peril
insured ensues and then this Policy will cover fur [sic] such ensuing
loss or damage only;

 D. Cost of making good faulty and/or defective workmanship, materials,
or supplies, unless direct physical loss or damage by a peril insured
ensues and then this Policy will cover for such ensuing loss or damage
only;

 E. Wear and tear, deterioration, corrosion, oxidation, inherent vice, latent
defect, gradual deterioration, erosion, moth, vermin, termites or other
insects[.]


FG sent the policy to TGS. Orsini testified that, to his knowledge, no one at TGS reviewed
the policy. Guaranty subsequently purchased FG, and Gowen became a vice president of
Guaranty.

 In the process of fulfilling the Premcor contract, TGS lifted a boom tower into place. 
After a few days, workers noticed that the steel structure members had separated at the welds. 
TGS immediately contacted Gowen regarding its coverage. Gowen forwarded a notice of
TGS's initial claim to Liberty and London American. TGS received a denial-of-coverage
letter stating the loss was not covered because it fell within the policy exceptions for faulty
workmanship, defective design, inherent vice, latent defect, and consequential damages. 

 TGS originally filed suit against Liberty, FG, Gowen, and Guaranty. Alleging breach
of contract against Liberty and "possible successor liability" against Guaranty, TGS also
sought a declaratory judgment that its losses were covered by the policy. In the event the
court or jury determined TGS's losses were not covered by the policy, TGS alternatively pled
that Gowen and FG were negligent in failing to secure insurance coverage for the losses
incurred. FG instituted a third-party suit against London American for negligence,
misrepresentation, violation of article 21.21 of the Texas Insurance Code, and indemnity. 
TGS amended its petition to add London American as a direct defendant. TGS settled with
Liberty, FG, and Gowen. TGS amended its petition naming only Guaranty and London
American as defendants. In its amended petition, TGS alleged agency, vicarious liability,
breach of contract, Texas Insurance Code violations, fraud, negligent misrepresentation,
negligence, fraudulent concealment, estoppel, continuing tort, and direct liability for claims
instituted against the defendants through third-party and cross-claims. The trial court 
granted London American's motions for summary judgment against TGS and FG, and 
Guaranty's traditional and no-evidence motion for summary judgment against TGS.

 We review a no-evidence summary judgment under the same standard as a directed
verdict. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). Accordingly,
we examine the record in the light most favorable to the non-movant; we credit evidence
favorable to the non-movant if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not. See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006). If the non-movant produces more than a scintilla of probative evidence to raise
a genuine issue of material fact, then summary judgment is improper. Tex. R. Civ. P.
166a(I); King Ranch, Inc., 118 S.W.3d at 751.

 To prevail on a summary judgment motion brought under rule 166a(c), a movant must
show that there is no genuine issue as to any material fact and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Little v. Tex. Dep't of Criminal Justice, 148
S.W.3d 374, 381 (Tex. 2004). A defendant "who conclusively negates at least one essential
element of a cause of action is entitled to summary judgment on that claim." IHS Cedars
Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (citing Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)). If the movant establishes a right
to summary judgment, the burden shifts to the nonmovant to raise a material fact issue
sufficient to defeat summary judgment. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195,
197 (Tex. 1995). Because neither the trial court's orders granting the motions for summary
judgment nor the final judgment specifies the basis for the ruling, we must affirm the trial
court's judgment if any of the theories advanced and preserved for appellate review are
meritorious. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).

Summary Judgment in Favor of London American Against TGS

 London American filed a no-evidence motion for summary judgment against TGS.
London American argues it is entitled to summary judgment against TGS's tort and contract
claims because (1) London American had no duty to TGS; (2) London American forwarded
the policy that FG Insurance Services, Inc. requested; (3) London American had no "contact"
related to the policy, and thus made no actionable representations; (4) TGS received the
policy in question more than two years before filing its claim, and thus its tort claims are
barred by limitations; (5) TGS has already recovered for its injury; and (6) there is no
evidence of a contract between London American and TGS.

 As to TGS's claims for fraud, negligent misrepresentation, and violations of article
21.21 based on alleged misrepresentations by London American, TGS must raise more than
a scintilla of evidence that London American made a false statement of fact. See, e.g., In re
First Merit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001) (fraud); McCamish, Martin, Brown
& Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999) (negligent
misrepresentation); Garrison Contractors, Inc. v. Liberty Mut. Ins. Co., 927 S.W.2d 296, 300
(Tex. App.--El Paso 1996), aff'd, 966 S.W.2d 482 (Tex. 1998). Absent a false statement of
material fact, TGS must raise more than a scintilla of evidence that London American had
a duty to disclose specific omitted material facts that rendered its other statements false. See
Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001). 

 London American did not alter Gowen's request and only added a cover letter when
it forwarded TGS's coverage request to Liberty. TGS failed to produce more than a scintilla
of evidence raising a genuine issue of material fact that London American made any
representations to it. As for whether TGS was misled by London American's alleged
omission of any material fact, London American, as an agent of the insurer, did not have a
duty to TGS to explain the policy terms and coverages included in the application. See N.
Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc., 930 S.W.2d 829, 836
(Tex. App.--Houston [1st Dist.] 1996, no writ); Riggs v. Sentry Ins., 821 S.W.2d 701, 705
(Tex. App.--Houston [14th Dist.] 1991, writ denied). Texas courts have previously declined
to impose on an insurance agent a duty to explain policy terms to an insured. See, e.g.,
Garrison Contractors, 927 S.W.2d at 300. To the extent TGS attempts to characterize
London American as an agent for the insured, the Texas Supreme Court has rejected an
attempt to impose liability on insurance agents solely for failure to obtain complete insurance
coverage. May v. United Servs. Ass'n of Am., 844 S.W.2d 666, 672 (Tex. 1992).

 The record reveals TGS did not review the policy when TGS received it. "An insured
has a duty to read the policy and, failing to do so, is charged with knowledge of the policy
terms and conditions." Ruiz v. Gov't Employees Ins. Co., 4 S.W.3d 838, 841 (Tex. App.--El
Paso 1999, no pet.)(citing Garrison Contractors, 927 S.W.2d at 300); see also Amarco
Petroleum, Inc. v. Tex. Pac. Indem. Co., 889 S.W.2d 695, 699 (Tex. App.--Houston [14th
Dist.] 1994, writ denied); Heritage Manor of Blaylock Props., Inc. v. Petersson, 677 S.W.2d
689, 691 (Tex. App.--Dallas 1984, writ ref'd n.r.e.). TGS failed to raise more than a scintilla
of evidence that London American made a false statement of fact or had a duty to TGS to
disclose any alleged omitted fact. Because we hold that London American is entitled to
summary judgment on this ground, we need not address the remaining grounds presented in
London American's motion. See FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872-73 (Tex. 2000) (where summary judgment does not specify grounds relied on, reviewing
courts are to affirm if any ground is meritorious). The trial court did not err in granting
London American's motion for summary judgment against TGS.


Summary Judgment in Favor of Guaranty Against TGS

 Guaranty filed a traditional and no-evidence summary judgment against TGS.
Guaranty argued it was entitled to summary judgment because (1) TGS's claims against
Guaranty are barred under the doctrine of election; (2) TGS's breach of contract claims are
precluded as a matter of law because they lie in tort and not in contract (3) TGS's breach of
contract claim is barred because TGS was not a party to a contract with Guaranty; TGS was
not a third-party beneficiary to a Guaranty contract, and Guaranty did not breach a
contractual duty to TGS; (4) TGS's negligence claim is barred because Guaranty owed no
duty to TGS nor did it breach a duty to TGS; and (5) TGS does not have standing to seek
recovery for certain elements of damages.

 In October of 2000, Guaranty purchased certain FG assets, including the "Trans
Global Account." The purchase agreement expressly provided, with certain exceptions not
applicable here, that Guaranty would not assume FG's liabilities. The policy made the basis
of this suit was placed by Gowen while employed at FG. Gowen testified by deposition that
TGS never asked Guaranty to secure coverage for defective workmanship.

 There is evidence in the record that during October 2000 Dan Orsini consistently
asked questions such as "Are we covered if something goes wrong?"; whether TGS was
covered "if there was something that went wrong along the way"[;] and did TGS have "all
the coverages that were requested and anything else [Gowen] saw [TGS] needed?" Orsini
testified that Gowen consistently assured TGS that TGS had received the coverages
requested. TGS contends this was a misrepresentation. TGS argues that Orsini's questions
to Gowen would cause a reasonable insurance agent to go back and check the terms of the
policy against the requested coverage to make sure there were no gaps in coverage. 
Regarding these inquiries, Orsini testified he asked Gowen "to get those coverages that were
requested." Orsini stated he also depended on Gowen "to tell us if there was something out
there that we need to have, be able to tell us to get it." "No legal duty arises on the part of
an insurance agent to extend the insurance protection of his customer merely because the
agent has knowledge of the need for additional insurance of that customer." Pickens v. Tex.
Farm Bureau Ins. Cos., 836 S.W.2d 803, 805 (Tex. App.--Amarillo 1992, no writ ) (citing
McCall v. Marshall, 398 S.W.2d 106, 109 (Tex. 1965)). Gowen testified that the insurance
coverage provided by Liberty for the project matched what he requested in his request for a
quote.

 TGS also argues that Guaranty should have disclosed that TGS did not have coverage
for faulty workmanship and defective design in response to TGS's inquiries. TGS is charged
with knowledge of the insurance policy's exclusions. See Ruiz, 4 S.W.3d at 841; Amarco
Petroleum, 889 S.W.2d at 699; Petersson, 677 S.W.2d at 691. The insurance policy TGS
purchased excludes costs of repair for faulty workmanship and defective design, "unless
direct physical loss or damage by a peril insured ensues[.]"

 TGS argues there is a genuine issue of material fact regarding the existence of a
contractual duty from Guaranty to TGS. TGS contends Guaranty assumed the contract
between FG and TGS, ratified the contract, and is liable for the breach of the contract in
failing to provide coverage requested. TGS's only evidence of ratification or adoption by
Guaranty of any alleged contract between TGS and FG is a letter to TGS from Timberline
Insurance Services, Guaranty's predecessor, referencing its Purchase Agreement with FG. 
Under the Purchase Agreement, Guaranty did not assume FG's liabilities related to existing
policies. On this record, TGS has not established that a genuine issue of material fact exists
as to whether Guaranty ratified or adopted any alleged contract between FG and TGS. The
trial court did not err in granting Guaranty's motion for summary judgment against TGS.

Summary Judgment in Favor of London American Against FG

 FG sued London American for negligence, misrepresentation, violation of article
21.21 of the Texas Insurance Code, and indemnity. London American argues it is entitled
to summary judgment because FG's causes of actions are actually claims for contribution
precluded under Texas law, and there is no evidence of vicarious liability necessary to
support its common-law indemnity claim.

 London American contends FG's claims amount to nothing more than pleadings for
contribution. In enacting Chapter 33 of the Texas Civil Practice and Remedies Code,
(Texas's proportionate responsibility statute), the legislature did not create a contribution
right in favor of a settling party against a joint-tortfeasor. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 33.001-.017 (Vernon 1997 & Supp. 2007); Beech Aircraft Corp. v. Jinkins, 739
S.W.2d 19, 21 (Tex. 1987); see also Global Drywall Sys., Inc. v. Coronado Paint Co., 104
S.W.3d 538 (Tex. 2003). The Texas Supreme Court held in Jinkins that a settling party is
prohibited from preserving a contribution claim against a joint tortfeasor who does not
participate in the settlement. Jinkins, 739 S.W.2d. at 22. London American argues FG is
barred from obtaining contribution from London American, a non-settling co-defendant, for
monies FG already paid for its share of alleged common liability.

 FG describes its claim as one for common-law indemnity. Section 33.017 preserves
the right of indemnity granted by contract or common law. See Tex. Civ. Prac. & Rem.
Code Ann. § 33.017 (Vernon Supp. 2007). Although largely replaced by a statutory scheme
for contribution, common-law indemnity is available in negligence cases (1) in which one
party's liability is purely vicarious or (2) to protect innocent sellers in certain product liability
cases. See generally B&B Auto Supply, Sand Pit, & Trucking Co. v. Central Freight Lines,
Inc., 603 S.W.2d 814, 817 (Tex. 1980); see also Bonniwell v. Beech Aircraft Corp., 663
S.W.2d 816, 819-820 (Tex. 1984). In general, common-law indemnity permits a party to
recover its expenses paid in discharging liability when, through no action of its own, it is
subjected to tort liability for wrongful conduct of another solely based on the parties'
relationship. See generally Humana Hosp. Corp. v. Am. Med. Sys., Inc., 785 S.W.2d 144,
145 (Tex. 1990). FG alleges a special relationship existed between FG and London
American that gave rise to a common-law right of indemnity through vicarious liability. FG
complains London American's acts or omissions in obtaining coverage for TGS subjected
FG to liability and damages. There is, however, no right of common-law indemnity against
a defendant who is not liable to the plaintiff. Vecellio Ins. Agency, Inc. v. Vanguard
Underwriters Ins. Co., 127 S.W.3d 134, 138 (Tex. App.--Houston [1st Dist.] 2003, no pet.) 
Because we have found no genuine issues or material fact regarding TGS's claims against
London American, FG has no right of common-law indemnity against London American. 
See id.

 FG argues its vicarious liability, misrepresentation, and article 21.21 claims are not
subject to Chapter 33. We disagree. In determining whether a particular claim sounds in
contract or tort, "[w]e must look to the substance of the cause of action and not necessarily
the manner in which it was pleaded." Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617-18 (Tex. 1986). FG provided no evidence of any contract between FG and London
American. FG conceded on appeal that FG was "forced to spend $5 million in settlement
with TGS because of London American's actions, including both misrepresentations and
omission[.]" We read FG's claims against London American as tort claims derivative of
damages paid in settling with TGS. FG cannot recast its contribution claim by artful pleading
to avoid claim preclusion under Chapter 33 of the Texas Civil Practice and Remedies Code
and Jinkins. See generally Viviano v. Moore, 899 S.W.2d 326, 327-28 (Tex. App.--Houston
[14th Dist.] 1995, writ denied). FG's negligence, misrepresentation, and article 21.21 claims
are contribution claims barred by FG's settlement with TGS.

 The trial court's final judgment granting summary judgments in favor of London
American against TGS and FG, and summary judgment in favor of Guaranty against TGS,
is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 9, 2006

Opinion Delivered December 13, 2007


Before McKeithen, C.J., Kreger and Horton, JJ.