Larry P. **FRITH** and Tena **Frith, Plaintiffs,**

v.

The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

No. Civ.A. H–96–4323.

United States District Court, S.D. Texas, Houston Division.

March 31, 1998.

Robert Bruce Langston, Houston, TX, Harry Lee Godfrey, Susman Godfrey, Houston, TX, for Plaintiffs.

Jeffrey A. Davis, Thomas J. Forestier, Donald D. Jackson, L.L.P., McGinnis, Lochridge & Kilgore, Houston, TX, for Defendants.

## ORDER

GILMORE, District Judge.

Pending before the Court is Defendant Guardian Life Insurance Company of America's ("Guardian's") Motion to Dismiss. (Instrument No. 31). Based on the parties'

submissions and the applicable law, the Court finds that Guardian's motion should be **GRANTED** in part and **DENIED** in part.

## I.

Plaintiffs Larry P. Frith and Tena Frith bring this action, individually and on behalf of others similarly situated, against Defendant The Guardian Life Insurance Company of America ("Guardian"),[1] asserting claims for breach of contract and breach of an implied duty of good faith and fair dealing and alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act. Plaintiffs also contend that Guardian is liable for fraud, fraudulent inducement, fraudulent concealment and negligent misrepresentation.

According to Plaintiffs, an agent of Guardian provided them with a "Guardian Lifeplan Illustration" for a $500,000 policy on the life of Plaintiff Larry Frith. Plaintiffs argue that the illustration showed that their "annual outlays" of $7,573 would "vanish" after eight years. The illustration also projected policy dividends over a period of 36 years. However, the illustration contained the following disclaimer:

Figures depending on dividends are neither estimated nor guaranteed, but are based on the 1988 dividend scale. The 1988 dividend scale reflects current company claims, expense, and investment experience (applicable to all policies) and taxes under current laws. Actual future dividends may be higher or lower than those illustrated depending on the Company's actual future experience.

(Class Action Complaint, Instrument No. 27, at ¶ 7).

1. In particular, Plaintiffs bring this suit "on behalf of a class of persons ... who, from and after January 1, 1983 ... purchased life insurance policies from Guardian under which dividends were payable." (Second Amended Class Action Complaint, Instrument No. 27, at ¶ 5).

2. According to Plaintiffs, all Guardian Life insurance policies issued from and after January 1, 1983, were accompanied by similar policy summaries and were issued with a 10–day "free look" provision.

On August 25, 1988, Plaintiffs purchased a "Whole Life" insurance policy in the amount of $100,000, Policy No. 3137502, on the life of their daughter, Jessica Frith. Plaintiffs assert that the "policy was accompanied by a policy summary that showed dividends at the end of policy years 1 through 5, 10 and 20 and at ages 65 and 70." (Class Action Complaint, Instrument No. 27, at ¶ 10). The policy summary stated the following:

Figures depending on Dividends are neither estimated nor guaranteed, but are based on the 1987 dividend scale, which reflects current company claims, expense, and investment experience (applicable to all policies) and taxes under current laws. Actual future dividends may be higher or lower than those illustrated depending on the Company's actual future experience.

(*Id.*). The policy also provided that "if it was returned to ... [Guardian Life] or its agent within ten (10) days, all premiums would be refunded and the policy would be 'void from the beginning.'" (*Id.*). Plaintiffs maintain that they relied on the illustration and the policy summary which indicated that dividends would be paid through the term of the policy.[2]

On November 3, 1998, Plaintiffs purchased two policies on the life of Larry Frith—Policy No. 3149968 in the amount of $272,188 owned by Larry Frith and Policy No. 3148518 in the amount of $238,726 owned by the Devlin, Frith & Phillips Profit Sharing Plan.[3] Later, Policy No. 3148518 was divided into two separate policies—Policy No. 3148518 in the amount of $117,302 owned by the Devlin, Frith & Phillips Profit Sharing Plan and Policy No. 3222648 owned by Larry Frith.[4] Again, Plaintiffs contend that they agreed to purchase these insurance policies because the illustration and the policy sum-

3. Plaintiffs also assert that Guardian Life's agent advised them to divide Larry Frith's policy into two separate policies—one owned by Larry Frith and the second owned by the Devlin, Frith & Phillips Profit Sharing Plan. Devlin, Frith & Phillips was Larry Frith's employer at the time that Plaintiffs purchased these policies.

4. Policy No. 3148518 has been surrendered and is not the subject of this lawsuit. (Class Action Complaint, Instrument No. 27, at ¶ 9).

mary showed that dividends would be paid throughout the term of the policies.

Then, on November 20, 1991, Plaintiffs purchased a "Whole Life" insurance policy in the amount of $100,000, Policy No. 3359890, on the life of their second daughter, Samantha K. Frith. Guardian's agent provided Plaintiffs with an illustration for a $100,000 "Whole Life" insurance policy "showing annual outlays of $1,866 for seven years, with dividends and other policy values continuing to increase every year up to age 64." (Class Action Complaint, Instrument No. 27, at ¶ 13). However, the illustration also stated that:

> Figures depending on dividends are neither estimated nor guaranteed, but are based on the 1991 dividend scale. The 1991 dividend scale reflects current company claims, expense, and investment experience (applicable to all policies) and taxes under current laws. Actual future dividends may be higher or lower than those illustrated depending on the Company's actual future experience.

(*Id.*). "The policy was accompanied by a policy summary and was subject to the same 10–day "free look" provision described above." (*Id.*). As with the other policies, Plaintiffs maintain that they relied on the policy summary and the illustration in deciding to purchase the insurance policy on the life of Samantha K. Frith.

According to Plaintiffs, they "have continued to pay the scheduled premiums on the foregoing policies and, as a result have paid over $75,000 on such policies." (*Id.* at ¶ 14). In July of 1995, Plaintiffs made the eighth payment on Policy No. 3222648 and Policy No. 3149968, both policies are owned by and are on the life of Larry Frith. In August of 1995, Plaintiffs made the eighth payment on Policy No. 3137502, the policy on the life of Jessica Frith. Plaintiffs assumed that these eighth payments would be their final payments on these policies. However, in June of 1996, Plaintiffs received notices from Guardian that the premium were due on all of the policies. "Plaintiffs paid these premiums by drawing on the automatic premium loan provisions of the respective policies." (*Id.*).

On August 29, 1996, Plaintiffs filed a cause of action in state court against Defendants Guardian Life and Hodges, Ocker & Company, alleging a claim for fraud and violations of the Texas Insurance Code and the Deceptive Trade Practices—Consumer Protection Act. (Instrument No. 1). The action was removed to this Court on December 16, 1996. Plaintiffs then filed their First Amended Complaint on January 5, 1997. (Instrument No. 7).

On April 4, 1997, Plaintiffs filed their Second Amended Class Action Complaint against Guardian Life asserting several claims including breach of contract, breach of an implied duty of good faith and fair dealing and alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act. Plaintiffs also contend that Guardian is liable for fraud, fraudulent inducement, fraudulent concealment and negligent misrepresentation. (Instrument No. 27).

Then, on June 10, 1997, Guardian filed a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted and Rule 9(b) for failure to plead fraud with particularity. (Instrument No. 31). In response, Plaintiffs maintain that Guardian's motion should be denied because they have adequately pled their causes of action. (Plaintiffs' Response, Instrument No. 33, at ¶ 42). With respect to their claims for fraud, Plaintiffs argue that they have "plead the 'who, what, when and where' with [sufficient] detail and clarity." (*Id.* at ¶ 33).

## II.

Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Such dismissals, however, are rare, *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir.1986), and only granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cog-

nizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Vines v. City of Dallas, Texas*, 851 F.Supp. 254, 259 (N.D.Tex.1994), *aff'd*, 52 F.3d 1067 (5th Cir.1995).

■ In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the Court accepts as true all allegations contained in the plaintiff's complaint. *Gargiul v. Tompkins*, 704 F.2d 661, 663 (2d Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Id.* "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark*, 794 F.2d at 970.

### III.

First, the Court will address Guardian's arguments regarding the life insurance policy for Samantha K. Frith. Guardian contends that Plaintiffs claims regarding the life insurance policy for their daughter, Samantha Frith, Policy No. 3359890, are not ripe for adjudication because such claims would be speculative and contingent. Guardian also contends that Plaintiffs do not have standing to bring such claims.

The general rule for determining ripeness was articulated in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). In *Aetna*, the Court stated that:

> [t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

57 S.Ct. at 464. "An important factor in considering ripeness is whether the tendered issue involves *'uncertain and contingent future events* that may not occur as anticipated,

or indeed may not occur at all.'" *Federal Election Commission v. Lance*, 635 F.2d 1132, 1138 (5th Cir.1981) (quoting 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532 (1975) (emphasis added)).

■ Plaintiffs argue that based on Guardian's conduct concerning the other policies, "[it] is ... almost certain—not just threatened—that premiums will be due under Policy No. 3359890 after the 'vanish' date passes." (Plaintiff's Response, Instrument No. 33, at 16). According to Guardian, "[d]amages can only occur if the insured, Samantha K. Frith, is alive in November of 1998, if no loans are taken on the policy, if all the required premiums are paid, and if the interest, cash values, and dividends at that point in time are insufficient to pay the premiums on the policy." (Defendant's Motion, Instrument No. 31, at 37). Plaintiffs do not dispute these contentions. Furthermore, Plaintiffs concede that they did not purchase Policy No. 3359890 until November 29, 1998. Plaintiffs, however, maintain that after their eighth annual premium payment, all premiums should "vanish." To date, Plaintiffs have not made the eighth and purportedly final premium payment on this policy. Since Plaintiffs' claims regarding Policy No. 3359890 involve uncertain and contingent future events, such as the insured's status in November of 1998 and future premium and dividends payments, the Court finds that such claims are not ripe for adjudication. Guardian's motion to dismiss Plaintiffs' claims based on the life insurance policy for Samantha K. Frith, Policy No. 3359890 is **GRANTED.**

Having determined that Plaintiffs claims with respect to Policy No. 3359890 are not ripe for adjudication, the Court need not address Guardian's other argument concerning the standing requirement.

### IV.

Next, Guardian argues that Plaintiffs fail to state a claim breach of contract because the language of the written contract controls and is inconsistent with Plaintiffs' claims. (Defendant's Motion, Instrument No. 31, at 11). In response, Plaintiffs emphasize the representations contained in the illustrations.

(Plaintiffs' Response, Instrument No. 33, at 15).

"A contract for insurance is subject to the same rules of construction as other contracts." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994) (citation omitted). "[W]hen the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms. An insurance policy is ambiguous only when it is 'reasonably susceptible to more than one meaning.... but if only one reasonable meaning clearly emerges it is not ambiguous.'" *AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.*, 920 F.Supp. 1318, 1324 (S.D.Tex.1996) (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex.1951)). The Court finds that the life insurance policies at issue in this case are unambiguous. The Court will, therefore, apply the plain meaning of the language to Plaintiffs' allegations in their complaint.

Plaintiffs seem to suggest that Guardian breached their insurance policies—namely, Policy Nos. 3222648, 3149968, and 3137502—by requiring them to make annual premium payments beyond the eighth premium payment. Plaintiffs contend that the premium were supposed to "vanish" after the final eighth payment. However, the clear language of the policies unambiguously refutes Plaintiffs' allegation.

Page one (1) of the insurance policies reads "Premiums payable during insured's lifetime" and "Participating—Annual dividends payable if earned." (Instrument No. 31, Exh. A, at 1). Page three (3) of the contract indicates that the annual premium is payable "for life[.]" (*Id.* at 3). Furthermore, Page Six (6) of the policies states the following:

> This is a participating policy. A participating policy shares in Guardian's divisible surplus. The policy's share, *if any*, is determined yearly by Guardian.... The dividend will reflect Guardian's mortality, expense, and investment experience; it will be affected by any outstanding loans and loan interest during the policy year. It is not expected that there will be any dividend before the second policy anniversary.

(*Id.* at 6) (emphasis added). The Court finds that the above terms of Plaintiffs' insurance policies are "plain, definite, and unambiguous[.]" *AGIP Petroleum Co.*, 920 F.Supp. at 1324. Therefore, the Court "may not vary [these] ... terms." *Id.*

A plain reading of the insurance contract cannot support Plaintiffs' argument. The policies specify that dividend payments depend on future events and that such payments are not guaranteed. Moreover, the contract clearly states that the annual premium is payable for life. Even construing all the allegations in the Complaint favorably to the Plaintiffs, Guardian could not have breached the unambiguous terms of the contract by telling Plaintiffs that more premiums needed to be paid after their eighth payment.

Plaintiffs also contend that their breach of contract claim is based on the representations made in Guardian's illustrations and policy summaries and the explanation of the policies made by Guardian's agent. (Plaintiffs' Response, Instrument No. 33, at 15; Class Action Complaint, Instrument No. 27, at ¶ 15). The contract, however, does not include the illustrations, the policy summaries, or the agent's explanation as part of the contract. The contract unambiguously states that the "policy is a legal contract between the owner and Guardian." (Instrument No. 31, Exh. A, at 1). Furthermore, page eleven (11) of the insurance contract provides that "[t]he entire contract consists of the this policy and the attached application.... No statement will be used to contest this policy unless contained in the application." (*Id.* at 11).

The Court finds these provisions of the insurance contract to be an effective merger clause which renders this policy a fully integrated contract. *See Smith*, 794 S.W.2d at 827 (describing a merger provision as a recital that [the contract] ... contains the entire agreement between the parties).

> The parol evidence rule provides that if the parties have integrated their agreement into a single written memorial, *all prior negotiations and agreements with regard to the same subject matter are excluded from consideration* whether they are oral or written. Additionally, a written instru-

ment presumes that all prior agreements relating to the transaction have been merged into it and it will be enforced as written and cannot be added to, varied, or contradicted by parol testimony. *The rule is particularly applicable where the written contract contains a recital that it contains the entire agreement between the parties or a similarly worded merger provision.*

*Smith v. Smith,* 794 S.W.2d 823, 827 (Tex. App.Ct.1990, no writ) (emphasis added) (citations omitted). Therefore, any extrinsic evidence of prior contemporaneous representations or agreements to alter the terms of the contract, such as the illustrations, the policy summaries, or the agent's explanation, is barred by the parol evidence rule.

Even if the Court were to admit the illustrations, the policy summaries, and the agent's explanation, they do not support Plaintiffs' contention that the premium payments were to "vanish" after the eighth payment or at a specified time. Plaintiffs concede that the illustrations and the policy summaries stated that the "[f]igures depending on dividends are neither estimated or guaranteed, but are based on ... the dividend scale [for the specified year]." (Class Action Complaint, Instrument No. 27, at 3–5). Plaintiffs also acknowledge that both of these documents indicated that Plaintiffs' "[a]ctual future dividends may be higher or lower than those illustrated depending on the Company's actual future experience." (*Id.*). Thus, nothing in the illustrations or the policy summaries stated that Plaintiffs' would no longer have to make premium payments after their eighth payment or that the premium payments would "vanish" at a specified time. Furthermore, Plaintiffs do not allege that Guardian's agent told them that dividend payments were guaranteed or that their premium payments would certainly "vanish" at a specified time. According to Plaintiffs, the agent merely explained the illustrations and the policy summaries to them.

Therefore, the Court finds that Plaintiffs' claims for breach of contract must fail as a matter of law. Guardian's motion to dismiss

Plaintiffs' breach of contract claims under 12(b)(6) is **GRANTED.**

### V.

Guardian then maintains that Plaintiffs' claim for breach of an implied duty of good faith and fair dealing must also fail as a matter of law because Guardian does not owe such a duty to Plaintiffs' under the facts as alleged. (Defendant's Motion, Instrument No. 31, at 19). According to Guardian, an insurer owes no duty to an insured in connection with the purchase transaction or the calculation and payment of premiums. (*Id.* at 19). Plaintiffs do not respond to Guardian's contention.

In *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1990), the "Texas Supreme Court first held that an *insurer* owes its insured a common-law duty of good faith and fair dealing. Such a duty 'may arise as a result of a *special relationship* between the parties governed or created by contract.'" *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 262 (5th Cir.1995) (quoting *Arnold,* 725 S.W.2d at 167) (emphasis added). A special relationship "exists only because the insured and the insurer are parties to a contract that is the result of unequal bargaining power, and by its nature allows unscrupulous insurers to take advantage of their insureds. Without such a contract there would be no 'special relationship' and hence, no duty of good faith and fair dealing.'" *Cavallini,* 44 F.3d at 262–63 n. 13 (quoting *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 698 (Tex.1994)).

To state a claim for "breach of the duty of good faith and fair dealing, the plaintiff must allege 'that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.'" *Cavallini,* 44 F.3d at 262 (quoting *Arnold,* 725 S.W.2d at 167). Without such a cause of action, "'insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed.'" *Id.*

In this case, Plaintiffs have not made any similar allegations in their complaint. Plaintiffs simply assert the following:

> Under their special relationship created by contract and implied law, ... Guardian owed Plaintiffs and the other proposed Class members a duty of good faith and fair dealing. By withholding the false and highly speculative nature of the information upon which it induced Plaintiffs and the other Proposed Class members to purchase their insurance policies, ... Guardian took advantage of this special relationship and breached its obligation of good faith and fair dealing to Plaintiffs and the other proposed Class members. The breach of that obligation proximately caused Plaintiffs and the other Class members to incur actual damages.

(Class Action Complaint, Instrument No. 27, at ¶ 30). These allegations are insufficient, as a matter of law, to state a claim for breach of the duty of good faith and fair dealing. *See Garrison Contractors v. Liberty Mut. Ins.*, 927 S.W.2d 296, 302 (Tex.App.Ct.1996, writ granted) ("Texas Supreme Court [has] recognized that an insurer owes its insured the duty of good faith and fair dealing in handling claims."). Plaintiffs do not even contend that Guardian either denied a particular claim or delayed a payment under their insurance policies.

Furthermore,

> [t]he concern [that] the good faith and fair dealing cause of action addresses, that unscrupulous insurers might take advantage of an insured's unequal bargaining power in negotiating and settling a claim, *does not reach the purchase transaction or the calculation and payment of premiums.* Consequently, Texas courts have not extended that duty to that area of the insurer/insured relationship.

*Garrison*, 927 S.W.2d at 302 (emphasis added). Plaintiffs' allegations concern Guardian's purported "withholding [of] the false or highly speculative nature of the information upon which ... [Guardian] induced Plaintiffs ... to purchase their insurance policies." (Class Action Complaint, Instrument No. 27, at ¶ 30). This alleged conduct by Guardian involves the purchase transaction and/or the calculation and payment of premium and therefore, does not implicate Guardian's duty of good faith and fair dealing. *See Garrison Contractors*, 927 S.W.2d at 302.

Accordingly, since Plaintiffs' complaint "does not include any allegations of misconduct in the claims handling process[,]" the Court finds that Plaintiffs' claim for breach of the duty of good faith and fair dealing must fail as a matter of law. *Garrison*, 927 S.W.2d at 301–302. Guardian's motion to dismiss this cause of action is **GRANTED.**

## VI.

In addition to breach of contract and breach of an implied duty of good faith and fair dealing, Plaintiffs claim that Guardian violated various sections of the Texas Insurance Code and the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). Plaintiffs also contend that Guardian is liable for common-law fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation. In response, Guardian maintains that these claims "based on fraud or misrepresentation must be dismissed because the alleged fraud is not pled with particularity as required" by Rule 9(b) of the Federal Rules of Civil Procedure. (Defendant's Motion, Instrument No. 31, at 33).

"A dismissal for failure to state fraud with particularity as required by Rule 9(b) [of the Federal Rules of Civil Procedure] is a dismissal on the pleadings for failure to state a claim." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir.1993); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir .1996). The Federal Rules of Civil Procedure generally "require in a Complaint only a 'short and plain statement' of the cause of action relied upon by [the][p]laintiff. FED. R.CIV.P. 8(a). However, under Rule 9(b) [of the Federal Rules of Civil Procedure], '... all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Mitchell Energy Corp. v. Martin*, 616 F.Supp. 924, 927 (S.D.Tex.1985). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED.R.CIV.P. 9(b).

The relationship between Rules 8(a) and 9(b) is " 'complimentary.... [The rules] must be read in that fashion, avoiding an exclusive focusing on the requirements of one or the other.' " *Mitchell,* 616 F.Supp. at 927 (quoting *Brown v. Joiner Int'l,* 523 F.Supp. 333, 335–36 (S.D.Ga.1981)). In applying Rule 9(b), the Fifth Circuit has noted that the particularity standard of Rule 9(b) must be interpreted in conjunction with Rule 8's requirement that the pleading contain a short and plain statement of the claims. *See Corwin v. Marney, Orton Investments,* 788 F.2d 1063, 1068 n. 4 (5th Cir.1986). " '[A]lthough Rule 9(b) calls for fraud to be pleaded with particularity, the allegations must still be as short, plain, simple, direct, and concise as is reasonable under the circumstances.' Rule 9(b) should not be read so as to obliterate this basic pleading philosophy." *Id.* (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1291 (1st ed.1969)).

"A complaint need not ... state all facts pertinent to a case in order to satisfy the requirements of Rule 9(b)." *Mitchell,* 616 F.Supp. at 927 (citing *SEC v. Tiffany Indus.,* 535 F.Supp. 1160, 1166 (E.D.Mo.1982)). However, "[p]leading fraud with particularity in this circuit requires 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir.1997). Furthermore, "articulating the elements of fraud with particularity requires a plaintiff to ... explain why the statements [that were allegedly made] were fraudulent." *Id.* (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). Thus, the focus of a Rule 9(b) inquiry should be whether,

> given the nature and facts of the case and the circumstances of the parties, the pleading in question is sufficiently particular to satisfy the purposes of Rule 9(b). The rule has three purposes. First, to ensure that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense. Second, it eliminates those complaints filed "as a pretext for discovery of unknown wrongs." ... Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*Mitchell,* 616 F.Supp. at 927 (citations omitted).

■ "Although the language of Rule 9(b) confines its requirements to claims of ... fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 283 (D.Del.1993) (citations omitted); *Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1193 (S.D.N.Y.1986) ("Rule 9(b) extends to all averments of fraud ..., whatever may be the theory of legal duty— statutory, common law, tort contractual, or fiduciary."). Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b). *See Williams,* 112 F.3d at 177–78 (dismissing plaintiffs state law claims for fraud and negligent misrepresentation for failure to comply with Rule 9(b)); *Jay Freeman Co. v. Glens Falls Ins. Co.,* 486 F.Supp. 140, 141 n. 1 (N.D.Tex.1980) (noting district court's dismissal of plaintiff's DTPA claims without prejudice for failure to comply with Rule 9(b)); *Waters v. State Farm Mut. Auto. Ins. Co.,* 158 F.R.D. 107 (S.D.Tex.1994) (dismissing plaintiffs' actions alleging fraud, violations of the DTPA and the Texas Insurance Code for failing to satisfy the requirements of Rule 9(b)).

■ As mentioned, Plaintiffs allege that the representations in the illustrations and policy summaries were false, fraudulent and deceptive. For example, Plaintiffs contend that the illustrations indicated that dividends would be paid throughout the term of the policies. However, according to Plaintiffs, Guardian knew that "it would be required to lower its dividend scale every year from 1987 through 1996." (Class Action Complaint, Instrument No. 27, at ¶ 13). Plaintiffs also argue that they relied on the explanation of these documents by Guardian's agents in de-

ciding to purchase the life insurance policies. In addition to providing an explanation of these documents, Plaintiffs allege that the agent persuaded and induced Plaintiffs to purchase the life insurance policies. Furthermore, Plaintiffs assert that Guardian failed to disclose "the existence of its 'dividend stabilization reserve' ("DSR") and the fact that the DSR comprised a material component of ... Guardian's dividend scales from 1987 through 1994.... Guardian's reliance on its DSR resulted in an artificial inflation of ... Guardian's dividends." (Class Action Complaint, Instrument No. 27, at ¶ 18).

Although Plaintiffs describe, in detail, the fraudulent statements and misrepresentations allegedly contained in the illustrations and the policy summaries, they fail to discuss the conduct and statements of the unidentified Guardian agent who purportedly explained these documents, advised and induced Plaintiffs to purchase these insurance policies. Plaintiffs do not state the time, place, name of the agent, or content of the agent's purported fraudulent statements and misrepresentations as required by Rule 9(b). *See Williams,* 112 F.3d at 178. Plaintiffs also fail to describe how the statements and explanations allegedly made by Guardian's agent were fraudulent or deceptive. Plaintiffs recognize their failure to identify the agent and explain the fraudulent nature of the agent's statements. (Plaintiffs' Response, Instrument No. 33, at 14). Without such information, Guardian cannot "prepare an effective response and defense" to *all* of Plaintiffs' allegations. *Mitchell,* 616 F.Supp. at 927.

When a party has failed to plead fraud with sufficient particularity, the Court will generally permit leave to amend to bring the complaint into compliance with the requirements of Rule 9(b). Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (citation omitted). In fact, "a court's discretion to dismiss a pleading without affording leave to amend is restricted by Rule 15(a), which directs that leave to amend shall be freely given when justice requires...." 2 MOORE'S FEDERAL PRACTICE § 9.03[4] (3d.ed.1997).

Given Plaintiffs' failure to plead the above mentioned allegations with sufficient particularity, the Court **ORDERS** Plaintiffs to file an amended complaint in accordance with the standards for pleading fraud set forth in Rule 9(b) of the Federal Rules of Civil Procedure within ten (10) days from the date this Order is signed. Guardian's motion to dismiss Plaintiffs' claims for violations of the Texas Insurance Code and the DTPA, fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation is **DENIED** without prejudice to re-urging following the submission of Plaintiffs' amended complaint.

## VII.

Accordingly, the Court **GRANTS** Guardian's motion with respect to Plaintiffs' claims based on the life insurance policy for Samantha K. Frith, Policy No. 3359890. The Court also **GRANTS** Guardian's motion to dismiss Plaintiffs' claims for breach of contract and breach of an implied duty of good faith and fair dealing. However, Guardian's motion to dismiss Plaintiffs' claims for violations of the Texas Insurance Code and the DTPA, fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation is **DENIED** without prejudice to re-urging following the submission of Plaintiffs' amended complaint.

The Clerk will enter this Order and provide all parties with a true copy.