Dr. John Milton PEACOCK and Ms. Robbie Cowan, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

AARP, INC., AARP Services Inc., AARP Insurance Plan, Unitedhealth Group, Inc. and Unitedhealthcare Insurance Company, Defendants.

Civil Action No. 3:13-cv-00459

United States District Court,
S.D. Texas, Galveston Division.

Signed February 12, 2016

Frank J. Janecek, Jr., Christopher Collins, Pro Hac, Vice, Robbins Geller Rudman & Dowd LLP, San Diego, CA, Jeffrey L. Raizner, Amy Bailey Hargis, Raizner Slania LLP, Jeffrey I. Avery, Houston, TX, Sean K. Collins, Sean K. Collins, Boston, MA, Christopher Chagas Martins, Janine D. Arno, Mark Jeffrey Dearman, Stuart Andrew Davidson, Robbins Geller Rudman & Dowd LLP, Boca Raton, FL, for Plaintiffs.

Alec W. Farr, Heather S. Goldman, Bryan Cave LLP, Brian D. Boyle, Jeffrey W. Kilduff, Meaghan Vergow, O'Melveny and Myers LLP, Washington, DC, Darci F. Madden, Jeffrey S. Russell, Bryan Cave LLP, St. Louis, MO, Gregory John Sachnik, Bryan Cave LLP, Andrew G. Jubinsky, Figari Davenport et al, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE

On December 23, 2013, Plaintiffs filed their original complaint alleging that they represent a class of senior citizens and disabled individuals in the State of Texas who were "forced into paying an illegal allowance fee for services relating to group Medicare supplemental health insurance." Dkt. 1. Defendants moved to dismiss that original complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 26. The motion to dismiss was granted by United States District Judge Keith P. Ellison, but Plaintiffs were given leave to amend. Dkt. 64.

Plaintiffs have now filed their First Amended Complaint—58 pages long with 370 pages of exhibits. Dkt. 66. Defendants have moved again to dismiss this Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 71.

## ANALYSIS

### A. Plaintiffs' First Amended Complaint

At the heart of Plaintiffs' suit is a commercial relationship between AARP and

the UnitedHealth Care Defendants, and Plaintiffs allege that Defendants entered into a joint to create a group health insurance plan that (1) illegally charges an improper monthly fee to its group plan members, and (2) fails to truthfully disclose this fee to governmental authorities and members of the insurance plan. Accordingly, Plaintiffs allege that Defendants have violated several provisions of the Texas Insurance Code as well as the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").[1]

There are two named plaintiffs in the case. The first, Dr. John Milton Peacock, is a Texas resident who purchased the insurance at issue in 2007 and then made monthly payments through December 2012, when he allowed the insurance to cease. The second, Robbie Cowan, is also a Texas resident who purchased the insurance at issue in 2002, and who continues to be a group plan member, making monthly payments. Plaintiffs allege that the monthly fee charged by AARP and the United-Health Defendants has varied over time, beginning at 3.25% in 2003 and increasing to 4.90% in 2014.

## B. Applicable Standards

### a. Dismissal Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir.2013) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011)). In deciding such a motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir.2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.2011) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory

---

1. *See, e.g.*, Tex. Bus. Com. Code § 17.46 (b)(2), (b)(3), (b)(5), (b)(24); Texas Ins. Code § 541.051(1)(a), (1)(b), (4); Texas Ins. Code § 541.052(a); Texas Ins. Code § 541.061; Texas Ins. Code § 541.151; Texas Ins. Code § 541.154; Texas Ins. Code § 541.251(a); Texas Ins. Code § 550.001; Texas Ins. Code § 560.002; Texas Ins. Code § 1251.004(a); Texas Ins. Code § 4001.101(a), (c); Texas Ins. Code § 4005.053(a), (c), (c)(2); and Texas Ins. Code § 4054.051.

statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal,* a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.,* 574 U.S. ——, 135 S.Ct. 346, 347, 190 L.Ed.2d 309 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

#### b. Scope of Review

■■■ A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir.2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiffs claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.,* 453 B.R. 645, 662 (N.D.Tex.2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.* Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007); accord *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

#### c. Pleading Statutes of Limitations under Rule 12(b)(6)

■■■ A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir.2003) (citations omitted). An out-of-time claim raised by an amended complaint can, however, "relate back" to a prior, original complaint if allowed by "applicable" law, or if the claim arises out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(a), (b). If the amended complaint does not relate back, the "amendment [is] futile." *Baker v. Carter,* No. 4:12–CV–478, 2013 WL 1196106, at *4 (E.D.Tex. Mar. 22, 2013) (citing *The Cadle Co. v. Riggert (In re Riggert),* 399 B.R. 453, 459–62 (Bankr.N.D.Tex.2009) (finding failure of amended complaint to relate back to timely original complaint rendered the new complaint futile)). If the late-filed claims of an amended complaint do properly relate back, dismissal is inappropriate. *See Matter of Bercier,* 934 F.2d 689, 693 n. 7 (5th Cir.1991); *see also Baker,* 2013 WL 1196106, at *4 ("If ... the second amended complaint relates back to the original complaint, it would be timely and,

therefore, amendment would not be futile.").

■ Courts apply the statute of limitations strictly, dismissing suits filed even a few days after the limitations date. *See Cochran v. Astrue*, No. 3:11–CV–1257–D, 2011 WL 5604024, at *1 (N.D.Tex. Nov. 17, 2011) (Fitzwater, Chief J.) (dismissing, on a Rule 12(b)(6) motion to dismiss, a suit filed ten days after the statute of limitations expired); *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex.App.–Fort Worth 1998, no pet.) (affirming trial court's grant of summary judgment barring libel claim filed four days after one-year statute of limitations expired); *Lowe v. Rivera*, 60 S.W.3d 366, 370–71 (Tex.App.–Dallas 2001, no pet.) (barring plaintiff's claim filed one day after statute of limitations expired, where court was closed day the statute of limitations expired and plaintiff tried and failed to file petition on date of closure).

### d. Pleading Fraud or Misrepresentation Under Rule 9(b)

■ "Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D.Tex.1998). Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir.2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir.2002). The

goals of Rule 9(b) are to "provide[ ] defendants with fair notice of the plaintiffs' claims, protect[ ] defendants from harm to their reputation and goodwill, reduce[ ] the number of strike suits, and prevent[ ] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir.2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir.1994)). Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir.1999) (both Texas Insurance Code and DTPA require a showing that defendant's conduct was the cause in fact of actual damages).

Defendants have moved to dismiss the Amended Complaint, contending that it asserts claims that are "untimely, nonjusticiable, and meritless."

### C. Does the Texas Insurance Code create a private right of action for all of the violations that Plaintiffs allege in the Amended Complaint?

Plaintiffs assert claims under Chapter 541 of the Texas Insurance Code ("Unfair Methods of Competition and Unfair or Deceptive Acts or Practices"), and this Chapter specifically allows private suits for actual damages. However, Plaintiffs also assert claims for a host of other Insurance Code violations, including Chapter 550 ("Prohibited Practices Relating to Payments"), Chapter 560 ("Prohibited Rates"), Chapter 1251 ("Group and Blanket Health Insurance"), Chapter 4001 ("Agent Licensing in General"), Chapter 4005 ("Conduct, Disciplinary Actions, and Sanctions"), and Chapter 4054 ("Life, Accident, and Health Agents"). These provisions do not contain an explicit private right of action.

"Causes of action may be implied only when a legislative intent to do so appears in the statute as written." *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004); *see e.g., Jones v. Chevron Phillips Chem. Co. LP Health & Welfare Trust*, A–14–CV–0761–DAE, 2014 WL 7236398, at *3 (W.D.Tex. Dec. 17, 2014) ("Jones' claim under the Texas Insurance Code, alleging that Defendants failed to obtain a certificate of authority to act as an insurer also does not create a private right of action, and may only be enforced by the Texas Attorney General.") (citing TEX. INS. CODE § 846.061).

The Texas Insurance Code is a comprehensive set of laws, divided into 21 Titles with multiple chapters and subchapters in each Title. Very few of its sections explicitly provide for a private right of action. One that does is section 541.151, stating: "A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: (1) defined by Subchapter B [§§ 541.051-541.061] to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or (2) specifically enumerated in Section 17.46(b), Business & Commerce Code [DTPA] as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment." TEX. INS. CODE § 541.151. Another is section 541.251, which allows actions to be brought by private individuals if they have been "damaged by an unlawful method, act, or practice defined in Subchapter B as an unlawful deceptive trade practice." TEX. INS. CODE ANN. § 541.251.

According to Plaintiffs, the language of this class action provision is broader than the language of section 541.151, and this broader language allows them to bring a lawsuit predicated on "any violation of the Insurance Code," not just violations of Subchapter B or the DTPA. Plaintiffs therefore contend that they may sue for violations of these other Insurance Code provisions because the actions they are complaining about are "unlawful methods" and "acts."

The Court disagrees. The alleged violations of section 550.001; section 560.002; section 1251.004(a); section 4001.101(a), (c); section 4005.053(a), (c), (c)(2); and section 4054.051 do not create a private right of action for Plaintiffs in this case. *See, e.g., Koenig v. Aetna Life Ins. Co.*, No. 4:13–CV–00359, 2015 WL 6473351, at *9 (S.D.Tex. Oct. 27, 2015) ("[E]ven assuming that Aetna is subject to liability under [Texas Insurance Code] § 4151.117(b), no private right of action exists for its alleged violations..."); *LJC Fin., LLC v. Alliant Nat. Title Ins. Co.*, CIV. A. H–14–648, 2014 WL 7190872, at *6 (S.D.Tex. Dec. 16, 2014) (no private right of action for alleged violations of Tex. Ins. Code § 2703.052); *Terry v. Safeco Ins. Co. of Am.*, 930 F.Supp.2d 702, 714 (S.D.Tex.2013) (no private right of action under § 542.003(b), also known as the Texas Unfair Settlement Practices Act); *compare Ojo v. Farmers Group, Inc.*, 356 S.W.3d 421, 424 (Tex. 2011) (analyzing claim that use of credit-scoring systems resulted in disparate impacts for minorities, and noting that suit could be brought under § 559.201 because that section explicitly made "violations of Chapter 559 an unfair practice under Chapter 541."). For sections that do not contain a private right of action, the Attorney General of the State of Texas and the Texas Department of Insurance are tasked with monitoring and enforcing violations. *See* TEX. INS. CODE ANN. § 81.004 ("The department shall report to the attorney general, promptly and in detail, any violation of law relating to insurance companies or the business of insurance."); TEX. INS.

CODE § 84.021 ("The commissioner may impose an administrative penalty on a person licensed or regulated under this code or another insurance law of this state who violates ... this code ....").

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claims that are predicated upon alleged violations of these Insurance Code sections.

### D. Are Plaintiffs' DTPA and Chapter 541 claims time-barred?

The Court now turns to Defendants' contention that Plaintiffs' surviving claims under Chapter 541 and the DTPA are time-barred. It is undisputed that Dr. Peacock purchased his insurance policy in 2007, Ms. Cowan purchased her policy in 2002, and that Plaintiffs filed their suit on December 23, 2013.

Claims under Chapter 541 must be brought within two years of "(1) the date the unfair method of competition or unfair or deceptive act or practice occurred; or (2) the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred." TEX. INS. CODE § 541.162. Claims under the DTPA must also be brought within two years. TEX. BUS. & COMM. CODE § 17.565 ("All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.").

### 1. "Continuing Violations"

Plaintiffs attempted to avoid this two-year statute of limitations by specifically pleading that their claims are "timely," based upon the payment of monthly premiums and yearly statements UnitedHealth provided to the Texas Department of Insurance. Plaintiffs also allege that their claims are timely because AARP and the UnitedHealth Defendants amended their governing agreement in October 15, 2013.

Plaintiffs contend these actions are "continuing violations" that prevent this Court from finding their claims are untimely. Although Plaintiffs point to several federal and state cases discussing the tolling of statutes of limitations for other causes of action, none of their authority supports tolling limitations for DTPA and Chapter 541 violations under this theory. *See, e.g., McCartney v. CitiFinancial Auto Credit, Inc.,* 4:10–CV–424, 2010 WL 5834802, at *7 (E.D.Tex. Dec. 14, 2010), report and recommendation adopted, 4:10–CV–424, 2011 WL 675386 (E.D.Tex. Feb. 16, 2011) ("Plaintiff cites the Court to no authority, and the Court is aware of none, applying a 'continuing tort' or 'continuing violation' theory to the ... DTPA.").

Accordingly, the Court will look to the plain language of the statutes and issue, and look only to the dates (1) on which the "unfair method of competition or unfair or deceptive act or practice" (Chapter 541) or "the false, misleading, or deceptive act or practice" (DTPA) occurred, or (2) the dates upon which the Plaintiffs discovered or, using reasonable diligence, should have discovered the acts had occurred. TEX. INS. CODE § 541.162; TEX. BUS. & COMM. CODE § 17.565.

### 2. Discovery Rule

Plaintiffs also contend that the allegations in their Amended Complaint "warrant application of the discovery rule" because Defendants' actions were "inherently undiscoverable," *i.e.,* Defendants hid and failed to disclose the improper monthly fees to group plan members and governmental authorities. Further, Plaintiffs ar-

gue that the question of whether the statute of limitations should be tolled in these circumstances is normally a fact question inappropriate for a motion to dismiss.

Plaintiffs are correct that courts have stated that "[d]etermining when a plaintiff has sufficient information for the limitations period to begin is often fact specific and inappropriate for a motion to dismiss pursuant to Rule 12(b)(6)." *In re Cobalt Int'l Energy, Inc.*, CV H–14–3428, 2016 WL 215476, at *9 (S.D.Tex. Jan. 19, 2016) (Atlas, J.) (citing *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir.2003)). However, Defendants contend that Plaintiffs have inadequately pled their allegations on this point, and seek dismissal under Rule 12(b)(6).

The term "discovery rule" usually refers to a common-law doctrine creating "a very limited exception" to applicable statutes of limitation, and it applies only when the plaintiff's injury is "both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex.2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 734–35. Here, however, the language of the DTPA and Chapter 541 *specifically incorporates* many (but not all) of these concepts, and the Court therefore notes that much of the case law regarding pleading requirements for the discovery rule cited by both Plaintiffs and Defendants is inapposite. *See, e.g., Gonzales v. Sw. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 57–58 (Tex.2013) ("In essence, the Legislature codified the discovery rule for DTPA claims."); *Constr. Fin. Services, Inc. v. Chicago Title Ins. Co.*, 04–12–00375–CV, 2013 WL 1846613, at *17 (Tex.App.–San Antonio May 1, 2013, pet. denied) ("The requirement of 'inherent undiscoverability' does not apply to a DTPA claim because the Legislature wrote the 'discovery rule' into the DTPA statute . . .").

Instead, the Court looks to cases discussing the accrual of claims under the DTPA and Chapter 541. In *Gonzales*, the Texas Supreme Court stated, "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" 400 S.W.3d at 57–58 (internal citations omitted); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex.1999) (holding that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury," not when the plaintiff knows "the specific nature of each wrongful act that may have caused the injury").

Plaintiffs' Amended Complaint specifically states that "Plaintiff Cowen [sic] did not gain knowledge of the illegal charge hidden in her monthly Member Contribution payments until her son, an attorney, alerted her to this scheme in March 2013, nor could she have gained such knowledge, even in the exercise of reasonable diligence until advised of the practice by her son." Plaintiffs also allege, "Plaintiff Peacock did not gain knowledge of the illegal allowance charge hidden in his monthly Member Contribution payment until he was alerted to the charge by his counsel in March 2013, nor could he have learned of the allowance and its illegal nature in the exercise of reasonable diligence."

Defendants point out that Plaintiffs' allegations are based, in part, upon written materials that Plaintiffs now claim are untrue, but the Plaintiffs' First Amended Complaint does not allege when or how the Plaintiffs first came into contact with those materials. Further, Defendants contend

that the majority, if not all, of the other statements upon which Plaintiffs based their DTPA and Chapter 541 claims were made in publically available documents and filings that were published long before the suit was filed—"Plaintiffs openly admit they knew these facts, but refuse to allege when and how they came by them despite being invited by the Court to do so... Instead, plaintiffs simply allege that they did not realize the royalty was an 'illegal charge' until so advised by counsel in March 2013."

Although this case presents a close call, the Court is mindful that it must, at this stage, "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir.2007); *see also In re Cobalt Int'l Energy, Inc.*, CV H–14–3428, 2016 WL 215476, at *9 (S.D.Tex. Jan. 19, 2016) ("Because it is plausible that the allegations in the Complaint could support a finding that the statute of limitations did not begin to run until August 2014, the Court cannot conclude at this pleading stage that the claims relating to Nazaki's ownership are time-barred.").

The Court notes that the caselaw Defendants cite to urge the Court to dismiss the Plaintiffs' claims for failure to exercise reasonable diligence reflect the applicable summary judgment standard. *Hunton v. Guardian Life Ins.*, 243 F.Supp.2d 686, 704 (S.D.Tex.2002). Accordingly, the Court notes that a denial of Defendants' motion to dismiss under Rule 12(b)(6) on these grounds does not preclude Defendants from raising the limitations issue again in a motion for summary judgment.

### E. Are Plaintiffs' DTPA and Chapter 541 claims barred by the "Filed Rate Doctrine"?

▇ The filed-rate doctrine applies when state law creates a state agency and a statutory scheme under which the agency determines reasonable rates for the service provided. *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 579, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex.2002).

▇ "The filed-rate doctrine prevents state-regulated entities from charging rates other than those mandated by the proper authority." *Winn v. Alamo Title Ins. Co.*, 372 Fed.Appx. 461, 461–63 (5th Cir.2010) (citing *Ark. La. Gas Co.*, 453 U.S. at 577, 101 S.Ct. 2925). "The doctrine also prohibits suits by customers against entities charging government-prescribed rates." *Id.* (citing *Keogh v. Chicago & Nw. Ry., Co.*, 260 U.S. 156, 162–65, 43 S.Ct. 47, 67 L.Ed. 183 (1922)).

In *Winn v. Alamo Title Ins. Co.*, the United States District Court for the Western District of Texas gave examples of the "numerous" federal courts that have applied the filed rate doctrine to bar actions against insurers. A–09–CA–214–SS, 2009 WL 7099484, at *5–6 (W.D.Tex. May 13, 2009), affirmed *Winn v. Alamo Title Ins. Co.*, 372 Fed.Appx. 461, 461–63 (5th Cir. 2010); *citing Rios v. State Farm Fire & Cas. Co.*, 469 F.Supp.2d 727, 737 (S.D.Iowa 2007) (applying filed rate doctrine to common law claim seeking return of insurance premiums); *Mullinax v. Radian Guar. Inc.*, 311 F.Supp.2d 474, 484 n. 6 (M.D.N.C.2004) (filing of rate by defendant with state Department of Insurance bars plaintiffs from challenging reasonableness of those rates); *Kirksey v. Am. Bankers Ins. Co.*, 114 F.Supp.2d 526, 529 (S.D.Miss. 2000) (applying filed rate doctrine to insurance companies); *Stevens v. Union Planters Corp.*, 2000 WL 33128256, at *3 (E.D.Pa. Aug. 22, 2000) (allegation of kickbacks in forced hazard insurance scheme barred by filed rate doctrine); *Allen v.*

*State Farm Fire & Cas. Co.,* 59 F.Supp.2d 1217, 1229 (S.D.Ala.1999) (filed rate doctrine barred claim challenging unlawfulness of rate filing by insurance company); *Korte v. Allstate Ins. Co.,* 48 F.Supp.2d 647, 651 (E.D.Tex.1999) (applying filed rate doctrine to claim asserting insurance rates improper due to submission by defendant of illegal subsidy factor accounts to state insurance regulator because state agency determined reasonable rates pursuant to statutory scheme); *Morales v. Attorneys' Title Ins. Fund, Inc.,* 983 F.Supp. 1418, 1429 (S.D.Fla.1997) · (dismissing plaintiffs' kickback claim against title insurer pursuant to filed rate doctrine because claim was nothing more than challenge to title insurance rates set by state regulators); *Calico Trailer Mfg. Co., Inc. v. Ins. Co. of N. Am.,* 1994 WL 823554 at *6 (E.D.Ark. Oct. 12, 1994) (filed rate doctrine barred plaintiff's challenge to insurance rates as inflated as result of conspiracy among defendant insurance companies).

Plaintiffs here contend that the filed rate doctrine does not wholly bar their claims because the doctrine only imposes a "rebuttable presumption" that the filed rates are reasonable. Further, they point out that the Texas Insurance Code provides for judicial review of filed rates, and argue their suit essentially seeks such judicial review. TEX. INS. CODE § 36.201. Finally, the Plaintiffs contend that the filed rate doctrine does not bar their claims because the Texas Insurance Code provides a private right of action against such "unscrupulous insurance entities."

The Court first addresses Plaintiffs' argument that the filed rate doctrine only imposes a rebuttable presumption that the rates at · issue are reasonable. Plaintiffs rely on the Texas Supreme Court's statement in *Grant* that "the [filed rate] doctrine holds that a tariff filed with and approved by an administrative agency under a statutory scheme is presumed reasonable unless a litigant proves otherwise." *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 216 (Tex.2002). However, the allegations in Plaintiffs' Amended Complaint do not raise the issue of whether the rates the Defendants have submitted to the Texas Department of Insurance are "unreasonable"—instead, the Plaintiffs here flatly allege that the rates are illegal because, after the rates are paid by the members, AARP retains a portion of the amount. Accordingly, *Grant* does not prevent this Court from finding that the filed rate doctrine applies and bars Plaintiffs' claims. *Id.* at 217 ("Consequently, the filed-rate doctrine prohibits a customer from suing a utility in contract or tort over issues that a publicly-filed tariffs terms govern.").

As to Plaintiffs' last two points, the judicial review provision of the Texas Insurance Code does not vest them with a private right of action. Further, the district court's opinion in *Winn* is highly instructive regarding any conflict between Chapter 541 and the filed rate doctrine. In *Winn,* the court noted that the plaintiffs' claims against their title insurance company were "that the filed rates are the product of improper conduct," and the plaintiffs argued that the filed rate doctrine did not bar their claims and that the Texas Insurance Code provided them a private right of action against their insurers. Relying on a previous opinion from the Southern District of Texas, the *Winn* court stated that the private right of action in Chapter 541 did not mean that the filed-rate doctrine did not bar plaintiffs claims—"Providing for a private right of action for unfair competition, which could encompass a wide array of activity, does not insolubly conflict with the filed rate doctrine limitation on actions directly challenging the validity of a rate set by a state agency." *Id.* at *8 (citing *Utility Choice, LP. v. TXU Corp.,*

2005 WL 3307524 (S.D.Tex. Dec. 6, 2005)). In *Winn*, the court further noted, "Plaintiffs maintain their claims are not barred because they are not seeking to undo a rate, but are seeking 'merely to recover damages based on defendants' illegal conduct.' Such a characterization of their claims is nothing short of disingenuous. As Defendants point out, earlier in the same pleading Plaintiffs admit they are seeking 'to recover for substantially illegal overcharges.' " *Id.*

The similarities to this case are significant. In *Winn*, the court held that, because the plaintiffs allegations "clearly rest on the amount paid by Plaintiffs for title insurance, effectively implicating the validity of the rates set for title insurance in Texas[,] Plaintiffs thus cannot now contend they should not be subject to the filed rate doctrine on the basis that they are not challenging the validity of rates approved by the Texas Department of Insurance." *Id.* (citing *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1317 (11th Cir.2004) (even if claim does not directly attack filed rate, award of damages that would effectively result in judicial determination of reasonableness of rate is prohibited under filed rate doctrine)). *See also Roussin v. AARP, Inc.*, 664 F.Supp.2d 412, 416 (S.D.N.Y.2009), aff'd sub nom. *Roussin v. AARP*, 379 Fed.Appx. 30 (2d Cir.2010) (holding claims against AARP with similar facts were barred by the filed rate doctrine under New York law, noting, "Although the claims are styled as claims of breach of fiduciary duties and gross negligence, Roussin essentially seeks relief for an injury allegedly caused by her payment of her AARP health care premiums, which include the AARP Allowance.").

Accordingly, the Court finds that the filed rate doctrine bars Plaintiffs' claims under Chapter 541 and the DTPA because these claims are pled to attack the legality *vel non* of the rates charged by Defendants for group insurance, and the Court therefore **GRANTS** the Defendants' motion to dismiss on these grounds.

### CONCLUSION

After considering the pleadings, the motion to dismiss, the responses, and the briefing in this case, the Court has concluded that Defendants are entitled to dismissal of all of Plaintiffs' claims because only the Chapter 541 and DTPA claims may proceed as private suits, and those claims as pled are barred under the filed rate doctrine.

Accordingly, the other arguments raised by Defendants for dismissal need not be addressed.

It is, therefore, **ORDERED** that Defendants' Amended Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 71) is **GRANTED**, and Plaintiffs' claims are **DISMISSED**, *with prejudice.*